UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>                 Petitioner,<br><br>  -against-<br><br>UNIVERSITY OF GHANA,<br><br>                 Respondent. | Case No.:<br><br>**PETITION TO CONFIRM,<br>RECOGNIZE, AND ENFORCE<br>FOREIGN ARBITRATION AWARD** |

Ace American Insurance Company ("Chubb") (the "Petitioner"), as assignee and successor-in-interest of the relevant rights and interests belonging to CPA 18 Integras GH Investor Ltd. (Ghana) ("CPA Ghana"), by and through its counsel, brings this action to confirm, recognize, and enforce a final and binding arbitration award dated August 1, 2018, rendered against the University of Ghana ("UG") (the "Respondent"), pursuant to a Second Amended and Restated Concession Agreement dated September 15, 2015, and its amendments (collectively, the "Agreements") between CPA Ghana and UG (together, the "Concession Parties"). This Petition is supported by the accompanying Memorandum of Law and Declaration of Joshua M. Bennett dated July 30, 2021 (the "Bennett Decl."), together with its exhibits.

## SUMMARY OF PETITION

1. Chubb brings this action pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*, which, in part, codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 38 (the "New York Convention"). In accordance with 9 U.S.C. § 207 and Article III of the New York Convention, Chubb petitions this Court to confirm, recognize, and enforce the arbitration award that was issued in the United Kingdom by a duly appointed and authorized independent expert

on August 1, 2018 (the "Termination Value Award"), Bennett Decl. Ex. A, and subsequently assigned to Chubb via an Assignment Agreement between Chubb and CPA Ghana, dated October 11, 2019, Bennett Decl. Ex. B.  Accordingly, Petitioner requests that this Court incorporate the terms of the Termination Value Award into a judgement in favor of Petitioner, along with further relief as this Court may deem just and proper.

## PARTIES

2. Petitioner Chubb is a public company registered under the laws of Pennsylvania, United States of America, located at 436 Walnut Street, Philadelphia, PA 19106.

3. Respondent UG is a body corporate established in the Republic of Ghana under the University of Ghana Act, 2010 (Act 806).  UG is a public tertiary institution that currently receives funding from the Government of Ghana.  UG's largest source of revenue is from government subvention and grants.[1]

## JURISDICTION AND VENUE

4. In accordance with the Concession Parties' arbitration agreement, the Termination Value Award was made in the United Kingdom (a New York Convention Contracting State).[2]  Petitioner now seeks to confirm, recognize, and enforce that Termination Value Award in the United States (another New York Convention Contracting State).  Both of the Concession Parties to the underlying termination value dispute, CPA Ghana and UG, are citizens of the Republic of Ghana (also a New York Convention Contracting State).

5. This Court has subject matter jurisdiction over this proceeding pursuant to Section 203 of the FAA, which provides that "[a]n action or proceeding falling under the Convention

---

[1] Per UG's 2018 Consolidated Financial Statement, the most recent year available.
[2] *Contracting States*, NEW YORK ARBITRATION CONVENTION, https://www.newyorkconvention.org/countries (last visited July 27, 2021).

shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203 (2018).

6. This proceeding "falls under the Convention" because the Termination Value Award arises out of a commercial relationship between the Concession Parties, neither of which is a citizen of the United States. *See* 9 U.S.C. § 202 ("An . . . arbitral award arising out of a legal relationship, . . . which is considered as commercial . . . falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention . . . .").

7. Venue is properly before this Court pursuant to 9 U.S.C. § 204, which provides that "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of [title 9 of the United States Code] may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought." "Venue is proper in this district because under the Convention, in the absence of an agreement to the contrary, venue is proper in any court that has subject matter jurisdiction." *Linsen Int'l, Ltd. v. Humpuss Sea Transp. PTE Ltd.*, 09 Civ. 10393 (GBD), 2011 U.S. Dist. LEXIS 48198, at *5 (S.D.N.Y. Apr. 29, 2011) (citing 9 U.S.C. § 204).

8. This Court has personal jurisdiction over UG because UG expressly consented to arbitrate disputes under the Agreements that could not be arbitrated in the United Kingdom in New York City. Bennett Decl. Ex. D, Cl. 8.3(b).[3] *See In re Coudert Bros. LLP*, 2017 WL

---

[3] Specifically, the Concession Parties agreed that if the arbitration could not take place in the United Kingdom, due to a "Force Majeure Event," then the proceedings would be conducted in New York City. As of the date of this Petition, a "Force Majeure Event" is, in fact, currently occurring in the United Kingdom because of the ongoing COVID-19 epidemic. Clause 7.1(a) of the Agreements defines Force Majeure as "Events that are beyond the

1944162, at *4 (S.D.N.Y. May 10, 2017) ("By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court.") (citing *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.")).

9. This Court also has personal jurisdiction over Respondent UG under 28 U.S.C. § 1330(b), which confers "[p]ersonal jurisdiction over a foreign state" and any "agency or instrumentality" thereof "as to every claim for relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605–1607, and over which the Court has subject matter jurisdiction. 28 U.S.C. § 1330(a)-(b).

10. Upon information and belief, Respondent UG is "an agency or instrumentality of a foreign State," here the Republic of Ghana, within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* According to the University of Ghana Act, 2010 (Act 806)—legislation passed by Ghana's Parliament and assented to by Ghana's President—UG is afforded governmental functions, including tax exemptions and the ability to obtain property by eminent domain. UG describes itself as "the premier university and the largest university in Ghana."[4] In that role, UG serves a public purpose; according to the University of Ghana Act, 2010 (Act 806), UG's founding principles include conducting research

---

reasonable control of the Affected Party, including, but not limited to: . . . (ii) Epidemic or plague, provided that it is not a result of the [CPA Ghana] negligence. . . ." The United Kingdom's Joint Biosecurity Centre currently has a "Level 3" advisory, indicating "a COVID-19 epidemic is in general circulation." *See* Joint Biosecurity Centre, *UK COVID-19 alert level methodology: an overview*, GOV.UK: DEPARTMENT OF HEALTH & SOCIAL CARE (Jan. 5, 2021), https://www.gov.uk/government/publications/uk-covid-19-alert-level-methodology-an-overview/uk-covid-19-alert-level-methodology-an-overview. On July 19, 2021, the United States Department of State issued their highest alert level for the United Kingdom, stating "Do not travel to the United Kingdom due to COVID-19." *See United Kingdom International Travel Information*, U.S. DEPARTMENT OF STATE (July 19, 2021), https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/UnitedKingdom.html.

[4] *Overview*, UNIVERSITY OF GHANA, http://www.ug.edu.gh/about/overview (last visited July 26, 2021).

with "special attention to subjects that relate to the social, cultural, economic, scientific, technological and any other problems which exist in Ghana or elsewhere in Africa."[5] UG's University Counsel Chairperson and other members of the University Council are appointed by the President of Ghana pursuant to Article 70 of the Constitution of the Republic of Ghana. Resignations of the University Counsel Chairperson must be directed to the President of Ghana and the President of Ghana is responsible for removing the University Counsel Chairperson upon the recommendation of the University Counsel.[6]

11. UG is not immune from the jurisdiction of this Court for purposes of this proceeding because the FSIA denies immunity to foreign states (or their instrumentalities) in any action to confirm an arbitral award governed by the New York Convention. Specifically, the FSIA provides that a foreign state (or its instrumentality) is not immune to jurisdiction in a suit:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party…or to confirm an award made pursuant to [] an agreement to arbitrate, if…the agreement or award is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

12. As noted above, the Termination Value Award is governed by the New York Convention, which is in force in the United States. Further, in Clause 8.3(e) of the Agreements, UG expressly "irrevocably waive[d] any claim of sovereignty or any other immunity regarding any proceedings commenced pursuant to this Agreement, including, without limitation, any proceedings to recognize and/or enforce an award rendered by the arbitrator(s)." Bennett Decl. Ex. D, Cl. 8.3(e).

---

[5] University of Ghana Act, 2010, 5 (Act 806).
[6] Id. at 40-41.

13.     In the event this Court finds that it lacks personal jurisdiction over UG based on the foregoing grounds, this Court, nonetheless, may exercise *quasi in rem* jurisdiction over UG's property located in the Southern District of New York.  *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 396 (2d Cir. 2009) (quoting *Frontera Res. Azer. Corp. v. State Oil Co.*, 479 F. Supp. 2d 376, 387 (S.D.N.Y. 2007)) ("[I]n the absence of minimum contacts, *quasi in rem* jurisdiction may be exercised to attach property to collect a debt."). According to UG's 2018 Consolidated Financial Statement (the most recent available), UG maintains one or more accounts with "Citibank – USA."  Citibank is located 388 Greenwich Street New York, NY 10013 U.S.A., in the Southern District of New York. Therefore, this Court may exercise *quasi in rem* jurisdiction in this action over UG's assets currently held by Citibank.

## FACTUAL BACKGROUND

### A.  The Agreements and UG's Failure to Perform

14.     The Concession Parties entered into a public private partnership via the Second Amended and Restated Concession Agreement, dated September 15, 2015, for the purpose of CPA Ghana constructing and managing four academic buildings (a College of Education, College of Health Science, a College of Humanities, and a College of Basic and Applied Sciences) and one dormitory on UG's campus in Accra, Ghana.  *See* Bennett Decl. Ex. C.  That Concession Agreement was twice amended by the First Amendment to Second Amended and Restated Concession Agreement, dated December 31, 2015, Bennett Decl. Ex. D, and the Second Amendment to Second Amended and Restated Concession Agreement, dated February 10-11, 2016, Bennett Decl. Ex. E.

15.     Chubb issued a corporate country risk insurance policy (Number N11222596) effective October 30, 2015 through October 29, 2035, insuring the activities under the

Agreements against certain covered causes of loss, including arbitration award default on the part of UG.

16. Pursuant to Clause 2.10 of the Agreements, UG was required to "procure a bank guaranty or letter of credit in . . . an amount equivalent to the least of (i) the next succeeding 18 months of Rent in Dollars for all Facilities, (ii) the amount of the Debt Due, and (iii) US$23,000,000.00." Bennett Decl. Ex. E, Cl. 2.10.

17. On March 4, 2016, CPA Ghana requested a bank guaranty or letter of credit from UG within one month pursuant to Clause 2.10 of the Agreements. More than one month after the April 3, 2016 deadline for UG to procure the Letter of Credit lapsed, on May 3, 2016, CPA Ghana notified UG that UG had not satisfied its obligations under Clause 2.10 and asked UG to remedy this breach within seven days (the "Seven Day Notice Letter"). The Seven Day Notice Letter, which CPA Ghana delivered to UG on May 17, 2016, informed UG that UG's failure to remedy its breach within seven days would be a "UG Event of Default" as defined by Clause 3.3(c) of the Agreements.

18. The Seven Day Notice Letter was followed by CPA Ghana's contractual default notice, dated May 24, 2016 (the "UG Default Notice"), which CPA Ghana delivered pursuant to Clause 3.3 of the Agreements. The UG Default Notice stated that because UG had failed to deliver a Letter of Credit within seven days of its receipt of the Seven Day Notice Letter, the UG Default Notice triggered a 90-day cure period under Clause 3.3(a) of the Agreements.

19. Following UG's failure to deliver the requisite Letter of Credit within the 90-day cure period, by letter dated November 2, 2016 (and delivered by hand to UG on November 3, 2016), CPA Ghana issued its Notice of Intent to Terminate pursuant to Clause 3.4(a) of the Agreements. Emphasizing UG's continuing failure to deliver the requisite Letter of Credit,

7

despite several prior notices, the Notice of Intent to Terminate informed UG that CPA Ghana would "have the right to terminate the Agreement and receive payment of the Termination Value" if UG still had not delivered the Letter of Credit following an additional 90-day cure period pursuant to Clause 3.4(b) of the Agreements.

20.     UG failed to deliver the requisite Letter of Credit within this additional 90-day cure period.  Accordingly, based on UG's repeated failure to honor its contractual obligations and the resulting UG Event of Default, on May 1, 2018, CPA Ghana delivered to UG a Termination Notice.

### B.  The Termination Value Award

21.     In the event of a termination arising out of a UG Event of Default, the Concession Parties agreed to a specific "final and binding" dispute resolution process in Clauses 3.9 and 8.4(b)(i) of the Agreements.  Pursuant to this agreed process, the Concession Parties would jointly appoint an independent expert—a practicing barrister and a member of the Commercial Bar Association—to calculate a "Termination Value," using a contractually-stipulated formula (defined in Clause 1.2 of the Agreements) and international financial best practices, which would then, per Clause 3.9(a)(iv), be payable by UG within 90 days.  The Concession Parties further agreed in Clause 3.9(a) that "the determination of the expert shall be deemed an ***arbitration award*** and shall be ***final and binding*** on the [Concession] Parties."  Bennett Decl. Ex. C, Cl. 3.9 (emphasis added.)

22.     To initiate the Termination Value resolution process, Clause 3.9(a) of the Agreements provides that "[i]n the event that this Agreement terminates as a result of . . . a UG Event of Default . . . UG and [CPA Ghana] . . . shall appoint one independent expert, . . . within fifteen (15) days from the Termination Date."  Consistent with this provision, CPA Ghana's

Termination Notice proposed three potential independent experts to determine the Termination Value. Among the proposed names was Nicholas Vineall QC.

23. On May 8, 2018, UG responded to CPA Ghana's Termination Notice. Notably, in this response, UG did not:

 (a) dispute the Event of Default upon which CPA Ghana's Termination Notice was based (namely, UG's failure to procure the requisite Letter of Credit);

 (b) challenge the effectiveness of CPA Ghana's Termination Notice (indeed, UG expressly conceded that the Agreements had been terminated by the Termination Notice as of May 1, 2018);

 (c) object to the proposed Termination Value resolution process under Clause 3.9 on the basis that UG did not agree to that process;

 (d) object to the proposed Termination Value resolution process under Clause 3.9 on the basis that it could not provide "final and binding" resolution of some or all of the issues disputed by the Concession Parties; or

 (e) object to any of CPA Ghana's three proposed experts to determine the Termination Value.

24. On May 16, 2018, Prof. Samuel Kwame Offei, UG's Pro-Vice-Chancellor for Academic and Student Affairs followed up with an email to CPA Ghana, which stated in its entirety: "Further to your email on the above, we write to advise you of our preference for Nicholas Vineall QC to conduct the determination of the termination value." Again, UG did not dispute CPA Ghana's alleged grounds for terminating the Agreements or object to determining

9

the Termination Value as a "final and binding arbitration award" under Clause 3.9, which would then be payable by UG within 90 days of that award.

25.     Had UG objected to Mr. Vineall's selection (as opposed to stating, as UG did, that Mr. Vineall was UG's "prefer[red]" candidate), or objected to any other candidate proposed by CPA Ghana, the next step would have been to commence a Fast Track Arbitration (as defined under Clause 8.4 of the Agreements) to select an appropriate expert.  *See* Bennett Decl. Ex. C, Cl. 3.9 ("If the parties cannot agree on an independent expert, the selection of the expert shall go to Fast Track Arbitration").  Indeed, CPA Ghana's Termination Notice acknowledged that if UG either (a) failed to respond or (b) objected to Mr. Vineall's appointment, by the May 16, 2018 deadline, then CPA Ghana would have commenced a Fast Track Arbitration to select an expert pursuant to Clause 3.9.

26.     Although the Concession Parties did not execute a letter of appointment, UG was informed of, and involved in, all decision-making regarding Mr. Vineall's terms of appointment.

27.     In an email dated May 23, 2018, UG's legal counsel confirmed its acceptance of Mr. Vineall's terms of payment and UG's intent to submit documentation and financial analyses to support UG's assessment of the Termination Value calculation in accordance with Clause 3.9.  Mr. Vineall confirmed the terms of his appointment by letter to the Concession Parties dated June 21, 2018.  On June 26, 2018, UG's Office of Legal Counsel wrote to CPA Ghana (in connection with a discussion regarding the timing of the Termination Value Award process) that "the Expert's terms of appointment only concluded on 18 June 2018."[7]

---

[7] Petitioner notes that CPA Ghana believed that Mr. Vineall's appointment was effective as of May 16, 2018.  In any event, UG's statement demonstrates UG's acceptance that Mr. Vineall's appointment was finalized at least 10 days before UG's purported objection on June 28, 2018, discussed below.

28. On June 28, 2018, UG's newly-appointed outside counsel wrote to CPA Ghana and Mr. Vineall, suggesting for the first time that Mr. Vineall was not validly appointed. In a follow-up letter, dated July 3, 2018, UG's outside counsel repeated that contention. UG's counsel did not reconcile, and has not since reconciled, on the one hand, UG's prior unreserved acknowledgement of Mr. Vineall's appointment—including (a) identifying Mr. Vineall as its preferred candidate, (b) accepting Mr. Vineall's terms of payment, and (c) agreeing to participate in the Termination Value process before Mr. Vineall —with, on the other hand, UG's outside counsel's belated objection to Mr. Vineall's appointment.

29. Notwithstanding UG's outside counsel's purported reservations regarding the validity of Mr. Vineall's appointment, the Concession Parties each proceeded to participate fully in the Termination Value determination process, as they indicated they would when Mr. Vineall was appointed. For example, the Concession Parties each submitted multiple rounds of written materials from external legal and financial advisers for Mr. Vineall's consideration. The Concession Parties also participated in an oral hearing on July 19, 2018 at which both Concession Parties had an opportunity to further address their respective positions regarding the calculation of the Termination Value.

30. Following that oral hearing, the Concession Parties agreed that Mr. Vineall would render his Termination Value Award on August 1, 2018. However, the day before this agreed date, on July 31, 2018, UG sent CPA Ghana, via email, a purported "Notice of Arbitration." Ostensibly prepared in accordance with Clause 8.3 of the Agreements, UG's Notice of Arbitration raised a laundry list of grievances regarding the Concession Parties' contractual relationship, ranging from the validity of the underlying Agreements and the Concession Parties' ability to perform thereunder, to the propriety of Mr. Vineall's appointment. As CPA Ghana

explained to UG in subsequent correspondence, according to CPA Ghana, UG's Notice of Arbitration was premature and non-compliant with the Concession Parties' agreement to arbitrate such disputes, because, among other things, the Concession Parties had not yet conducted the requisite negotiation and mediation procedures with respect to any of UG's alleged grievances (as required by Clause 8.2 of the Agreements).

31.     Meanwhile, as the Concession Parties had agreed, on August 1, 2018, Mr. Vineall rendered his Termination Value Award in London, United Kingdom.  Pursuant to the formula stipulated in Clause 1.2 of the Agreements and using "international financial best practices," as stipulated in Clause 3.9, Mr. Vineall calculated the Termination Value payable by UG using the "Head B" calculation to be "US$145,077,127 plus the [Ghanaian] CEDI equivalent of US$20,688,626."  This amount reflects (a) the net present value (applying the Discount Rate) of the total future Academic Rent for the Concession Period following the Termination Date (US$145,077,127), and (b) the net present value (applying the Discount Rate) of the total future Residential Rent for the Concession Period following the Termination Date (CEDI equivalent of US$20,688,626).

32.     As the Concession Parties expressly agreed in Clause 3.9(a) and as Mr. Vineall expressly memorialized, the Termination Value Award "shall be deemed an ***arbitration award*** and shall be ***final and binding*** on all [Concession P]arties."  Bennett Decl. Ex. A, para. 6; Bennett Decl. Ex. C, Cl. 3.9 (emphasis added.)

### C.  Assignment of the Award to Chubb and Current Status

33.     On October 11, 2019, pursuant to Chubb's country risk insurance policy covering the Agreements, Chubb and CPA Ghana executed an Assignment Agreement, by which CPA Ghana assigned Chubb "all rights of recovery . . . in respect of the [Expert Award]" and "all . . .

rights, title and interest in, and rights to receive, any and all amounts outstanding under the [Expert Award]." Bennett Decl. Ex. B, Cl. 1.

34.     UG was given the opportunity to comment on a draft version of the Assignment Agreement and a copy of the executed agreement was shared with UG in June 2019.

35.     Despite UG's payment obligations under Clause 3.9(a)(iv) and CPA Ghana's and Chubb's repeated attempts to resolve this dispute, UG has made no payment towards the Termination Value Award.  At the same time, UG has taken no action to vacate or set aside the Termination Value Award before any competent authority of the country in which the Termination Value Award was made, namely the United Kingdom.

36.     Likewise, since 2018, there has been no progress in UG's purported arbitration against CPA Ghana or the resolution of any of UG's enumerated "disputes" thereunder.  The Concession Parties have not constituted an arbitral tribunal or selected any applicable arbitral rules.

37.     In an effort to establish and recover the Termination Value Award pursuant to its assigned rights, Chubb brings this Petition, under 9 U.S.C. § 207 and within three years after the Termination Value Award was made, to confirm, recognize, and enforce that Award.  In accordance therewith, Chubb also seeks a judgement against UG in the amount of the Termination Valuation Award, the entirety of which remains outstanding and unpaid.

## COUNT I

**(Confirmation, Recognition, and Enforcement of Award Under 9 U.S.C. § 207)**

38.     Chubb incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

39.     The United States, the United Kingdom, and the Republic of Ghana are contracting states to the New York Convention.

40. The Termination Value Award is subject to the New York Convention because the Award arises out of a commercial contract between the Concession Parties, neither of which is a citizen of the United States. See 9 U.S.C. § 202.

41. Consistent with CPA Ghana's and UG's agreements to arbitrate in Clauses 3.9 and 8.3, the Termination Value Award was made at the place of arbitration, in London, United Kingdom, by an expert duly appointed and qualified to render such an award. As the Concession Parties agreed and as the Termination Value Award reflects, the Termination Value Award constitutes "an arbitration award and shall be final and binding on all Parties."

42. The New York Convention, incorporated into 9 U.S.C. § 201, requires that the party applying for recognition and enforcement shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement referred to in Article II or a duly certified copy thereof." These requisite documents are Exhibits A, C, D, E to the Bennett Declaration.

43. 9 U.S.C. § 207 provides that, in an action to confirm an award governed by the New York Convention, the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

44. As demonstrated further in the accompanying Memorandum of Law, none of the New York Convention's enumerated grounds for refusing or deferring recognition apply to the Termination Value Award. In particular, despite UG's belated complaints and its counsel's after-the-fact reservation of rights, Mr. Vineall was duly appointed in accordance with the contractually-stipulated procedure set forth in Clause 3.9 and fully discharged his obligations within the scope of authority granted to him. UG's full participation in the Termination Value

Award process (however qualified by its counsel's untimely reservation of rights) further belies UG's post-hoc efforts to undermine the integrity of the Termination Value Award.  In sum, the Termination Value Award is enforceable as a final and binding arbitration award; it is not subject to review or modification by any arbitral tribunal or court, including any tribunal that may yet be constituted pursuant to UG's inchoate, parallel arbitration proceedings.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Chubb respectfully requests:

(a) an Order confirming, recognizing, and enforcing the Termination Value Award and entering judgement thereon;

(b) a Judgement in favor of Petitioner Chubb, as assignee and successor-in-interest of the rights to recovery under the Termination Value Award, and against Respondent UG in the amount specified in the Termination Value Award, which remains outstanding unpaid by UG, namely US$145,077,127, plus the [Ghanaian] CEDI equivalent of US$20,688,626; and

(c) such further relief as the Court may deem just and proper.

Dated: New York, NY
       July 29, 2021

PAUL HASTINGS LLP

By: /s/ *Kurt w. Hansson*
    Kurt W. Hansson
    Joshua M. Bennett
    200 Park Avenue
    New York NY 10166
    Telephone: 1.212.318.6000
    kurthansson@paulhastings.com
    joshuabennett@paulhastings.com

    Jonathan C. Drimmer (*pro hac vice pending*)
    2050 M. Street NW
    Washington DC, 20036
    Telephone: 1.202.551.1870
    jondrimmer@paulhastings.com

    *Attorneys for Petitioner Ace American Insurance Company*