```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
ACE AMERICAN INSURANCE COMPANY,

                Petitioner,
                                        MEMORANDUM AND ORDER
          - against –
                                         21 Civ. 6472 (NRB)
UNIVERSITY OF GHANA,

                Respondent.
-------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On July 30, 2021, ACE American Insurance Company ("Chubb" or "petitioner") filed a petition ("Petition") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), seeking, inter alia, to confirm and enforce an alleged foreign arbitration award against University of Ghana ("UG" or "respondent"). ECF No. 8. Chubb is the assignee of certain rights and interests of non-party CPA Ghana ("CPA"), whose contract with UG underlies this dispute. Presently before the Court is respondent's motion to dismiss the petition for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue. In the alternative, respondent seeks a stay of this matter pending the ongoing arbitration between UG and CPA in London, United Kingdom. For the reasons explained herein, respondent's motion to dismiss is granted.

## BACKGROUND[1]

On September 15, 2015, the University of Ghana entered into a public-private partnership (the "Partnership") with CPA Ghana, pursuant to which UG would lease land and grant a concession to CPA to finance, construct, operate, and maintain various new infrastructure projects on UG's campus. Pet. ¶ 14. The Partnership was governed by the Second Amended and Restated Concession Agreement (the "Agreement"), ECF No. 15-3, as amended. Id. Chubb issued a corporate country risk insurance policy for the Partnership, insuring the activities contemplated under the Agreement against certain covered losses, including any default by UG on an arbitration award. Id. ¶ 15.

In May 2016, CPA notified UG that UG had not satisfied one of its obligations under the Agreement — namely, UG had not procured the requisite letter of credit for CPA. Pet. ¶ 17. CPA subsequently issued a notice of default, which UG failed to cure. Id. ¶¶ 18-20. On May 1, 2018, CPA delivered to UG a notice of termination. Id. ¶ 20. Under the Agreement, when the Agreement is terminated due to an event of default by UG, the parties are

---

[1] The following facts, which are drawn primarily from the Petition, are accepted as true for purposes of the Court's ruling on respondent's motion to dismiss. Where noted, facts are also drawn from the declarations and documents submitted alongside, or incorporated by reference in, the Petition. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court draws all reasonable inferences in petitioner's favor. Id. at 110-11.

required to appoint an independent expert to determine the "Termination Value" of the contract. See Agreement, Clause 3.9. The Termination Value estimates the net present value of the future rent revenue CPA expected to generate and is to be calculated according to a predetermined formula. Id. Accordingly, after CPA issued the notice of termination to UG, the parties commenced the "Expert Determination" process and selected a London-based expert, Nicholas Vineall QC, to calculate the Termination Value. Pet. ¶ 24.[2]  The parties then submitted materials for Mr. Vineall's consideration and participated in an oral hearing on July 19, 2018. Id. ¶ 29. On August 1, 2018, Mr. Vineall rendered a Termination Value Award totaling approximately $165,000,000. Id. ¶ 31.

One day prior to the announcement of Mr. Vineall's determination, UG sent CPA a notice of arbitration. See ECF No. 38-38.[3]  The notice sought to commence arbitration in London in order to resolve disputes related to, inter alia, the validity of the Agreement and the propriety of the Expert Determination process. Id. Thereafter, UG and CPA each selected an arbitrator for the three-person tribunal. See id.; ECF No. 38-40. However, CPA maintained that UG had not satisfied the negotiation and

---

[2] UG disputes the legitimacy of Mr. Vineall's appointment. Because that issue is not dispositive of the present motion, the Court does not address it.
[3] This notice and the parties' subsequent correspondence are incorporated by reference in the Petition. See Pet. ¶ 30.

mediation prerequisites to arbitration and refused to permit the arbitration to move forward.  ECF Nos. 38-40-47.  Between 2018 and 2020, UG sent several correspondences to CPA seeking to advance the arbitration, to no avail.  Id.; ECF Nos. 38-48-55.  In the midst of this stalemate, on October 11, 2019, CPA and Chubb executed an Assignment Agreement, pursuant to which CPA assigned to Chubb all rights of recovery and interests in the Termination Value Award.  Pet. ¶ 33.  To date, no payments on the Termination Value Award have been made and the London arbitration has not progressed.  Id. ¶¶ 35-36.

## DISCUSSION

Respondent moves to dismiss the Petition for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue.  Memorandum of Law in Support of Respondent University of Ghana's Motion to Dismiss or Stay Proceedings ("Mot.") at 2, ECF No. 37.  In the alternative, respondent seeks a stay of this action pending the outcome of the arbitration in London.  Id. at 3.  Both personal and subject matter jurisdiction are threshold issues that should be decided before any merits determinations.  Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430-31 (2007).  However, as between the two jurisdictional issues, "there is no mandatory 'sequencing[.]'"  Id. at 431 (quoting

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)).  "In appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction."  Id.  For example, when "the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction."  Ruhrgas, 526 U.S. at 588.

Here, the alleged basis for subject matter jurisdiction is Section 203 of the FAA, which provides that federal district courts have original jurisdiction over "[a]n action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]."  9 U.S.C. § 203; see Pet. ¶ 5.  Included within the Convention's ambit are actions to enforce foreign "arbitral award[s] arising out of a legal relationship . . . which is considered as commercial . . . ."  9 U.S.C. § 202.  The Petition asserts that the Termination Value Award fits this bill and thus is enforceable in federal court.  Pet. ¶ 6.  In its motion to dismiss, respondent disputes this characterization, arguing the Termination Value Award is not a foreign arbitration award, and thus does not "fall[] under" the Convention.  Mot. at 18-22.

This is precisely the type of thorny, substantive dispute that, "in the interests of judicial restraint and judicial

economy," courts avoid adjudicating when the case "can be resolved on more familiar territory." Pablo Star Ltd. v. Welsh Gov't, 170 F. Supp. 3d 597, 602 (S.D.N.Y. 2016) (citations omitted); see, e.g., George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd, No. 20 Civ. 2626 (VEC), 2021 WL 168930, at *1 n.1 (S.D.N.Y. Jan. 18, 2021) (deciding motion to dismiss petition to enforce foreign arbitral award on personal jurisdiction grounds without reaching issue of venue); see also Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 n.6 (2d Cir. 2013) (deciding motion to dismiss on forum non conveniens grounds without reaching issue of subject matter jurisdiction). Because this motion can be resolved on personal jurisdiction grounds, the Court does not reach respondent's subject matter jurisdiction or venue arguments, or its stay request. It is personal jurisdiction to which we now turn.

**A. Legal Standards on a Rule 12(b)(2) Motion to Dismiss**

"On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), 'the [petitioner] bears the burden of establishing that the court has jurisdiction over the [respondent].'" MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d 738, 746 (S.D.N.Y. 2020) (quoting DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)). "Where, as here, a district court in adjudicating a motion pursuant

to [Rule] 12(b)(2) relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, [the petitioner] need only make a prima facie showing of personal jurisdiction." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks and citation omitted). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the [respondent]." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks, alteration, and citation omitted).

In deciding a motion to dismiss for lack of personal jurisdiction, "[t]he court assumes the verity of the [petitioner's] allegations 'to the extent they are uncontroverted by the [respondent].'" Jonas v. Est. of Leven, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (quoting MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012)). Further, "jurisdictional allegations 'are construed in the light most favorable to the [petitioner] and doubts are resolved in the [petitioner]'s favor.'" Jinhai Intelligent, 2021 WL 168930 at *3 (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)). However, the Court "need not accept either party's legal

conclusions as true nor will it draw 'argumentative inferences' in either party's favor." Id. (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012)).

**B. Personal Jurisdiction**

In an action to enforce a foreign arbitral award, "the enforcing court must have in personam or quasi in rem jurisdiction over the party ordered to pay." Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC, No. 11 Civ. 420 (RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012) (citing Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic, 582 F.3d 393, 398 (2d Cir. 2009)). Typically, to determine whether the exercise of personal jurisdiction is proper, courts first "apply the forum state's long-arm statute," and then consider "whether personal jurisdiction comports with due process protections established under the Constitution." Eades v. Kennedy, PC Law Office, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks and citations omitted). Here, however, petitioner essentially concedes it cannot rely on a statutory basis for jurisdiction, nor could it satisfy the Constitutional requirements for due process. See Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Dismiss or Stay Proceedings ("Opp.") at 15, ECF No. 42 ("Chubb's bases for personal jurisdiction in this case do not involve the application of the Due Process 'minimum

contacts,' 'reasonableness,' or 'arising out of or related to' tests."). Instead, petitioner asserts two alternative bases for jurisdiction. First, petitioner argues that the arbitration clause set forth in the Agreement establishes respondent's consent to jurisdiction in New York. Second, petitioner argues that jurisdiction exists under the Foreign Sovereign Immunities Act ("FSIA").[4] The Court addresses each argument seriatim.

1. Consent to Jurisdiction

A court will infer consent to jurisdiction "[w]hen a party agrees to arbitrate in a state[] where the Federal Arbitration Act makes such agreements specifically enforceable," Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 979 (2d Cir. 1996) (internal quotation marks, alterations, and citations omitted), the theory being that "by agreeing to arbitration in [a state], a party makes himself as amenable to suit as if he were physically present in [that state]," Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Younger Bros., No. 00 Civ. 3277 (GEL), 2001 WL 669042, at *4 (S.D.N.Y. June 13, 2001) (quoting Farr & Co. v. Cia. Intercontinental de Navigacion de Cuba,

---

[4] The Petition also asserts that this Court may exercise quasi in rem jurisdiction over respondent's property located in the Southern District of New York. In a sworn declaration, UG's in-house legal counsel stated that UG has no assets in the United States other than dormant checking and savings accounts at Citibank, which have a total balance of less than $100,000, and which were not used in connection with the disputes between UG and CPA or Chubb. Decl. of Professor Olivia Anku-Tsede ¶ 7, ECF No. 38. In light of that representation, petitioner is not pursuing personal jurisdiction on this basis, Opp. at 21 n.14, so the Court need not, and does not, address it.

S.A., 243 F.2d 342, 347 (2d Cir. 1957)). Under such circumstances, "it is not necessary to analyze jurisdiction under [the applicable] statute or federal constitutional requirements of due process." Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010).

Clause 8.3(b) of the Agreement, as amended, sets forth the arbitration provision at issue here:

> the place of arbitration shall be London, UK, provided however, that if the arbitration cannot take place in the UK due to a Force Majeure Event occurring in such location, then (1) the arbitration shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules . . . [and] (2) the arbitration will be conducted . . . in the City of New York, New York.

ECF No. 15-5. The language of this clause is unambiguous: "the place of arbitration **shall be** London, UK." Id. (emphasis added). The parties' agreement to arbitrate in New York is expressly contingent upon the triggering of a condition precedent, and a highly improbable condition at that. Specifically, arbitration in New York is permissible only if it impossible to conduct an arbitration anywhere in the United Kingdom due to a force majeure event occurring there. Petitioner does not allege that the force majeure condition precedent has been satisfied, nor could it: there

is in fact an ongoing arbitration between UG and CPA in London.[5] Since the condition precedent to arbitration in New York has not occurred, the Court cannot infer that respondent has consented to personal jurisdiction here.

This is consistent with the handful of cases that have addressed the issue of unsatisfied conditions precedent in the analogous context of consent to suit clauses. See, e.g., Eli Lilly & Co. v. Home Ins. Co., 794 F.2d 710, 718-20 (D.C. Cir. 1986) (declining to infer consent to personal jurisdiction where condition precedent in consent to suit clause had not been satisfied); Kyne v. Carl Beiber Bus Servs., 147 F. Supp. 2d 215, 218 (S.D.N.Y. 2001) (holding failure to satisfy notice requirement prior to filing suit "result[ed] in withdrawal of defendant's consent to suit"). It is also consistent with the cases cited by petitioner in its opposition, all of which involved arbitration clauses that unconditionally sited arbitration in a specific location or did not designate a particular forum for arbitration at all. Indeed, petitioner cites no apposite authority supporting its view that a court may infer consent to jurisdiction based on

---

[5] That apparently there has been no progress in the London arbitration since 2018 is of no moment. Petitioner does not allege that the arbitration was terminated and, more to the point, does not allege that arbitration in London (or elsewhere in the United Kingdom) would be impossible due the occurrence of a force majeure event.

a contingent arbitration provision with an unsatisfied condition precedent.  Thus, the Court cannot exercise personal jurisdiction over respondent on this basis.[6]

2. Foreign Sovereign Immunities Act

Petitioner posits the Foreign Sovereign Immunities Act as an alternative basis for personal jurisdiction.  The FSIA vests district courts with personal jurisdiction over nonjury civil actions against foreign states "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330.  The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603.  Petitioner asserts that respondent is an agency or instrumentality of the Republic of Ghana within the meaning of the FSIA, Pet. ¶ 10, and respondent does not dispute that characterization.

Nevertheless, respondent argues that notwithstanding the FSIA, agencies and instrumentalities of sovereign states are entitled to "protection from the exercise of personal jurisdiction under the Due Process Clause."  Mot. at 16 (quoting Gater Assets

---

[6] Because the existence of an unfulfilled condition precedent is determinative, the Court does not address the slew of other arguments the parties put forward on the issue of consent to jurisdiction.

-12-

Ltd. v. AO Moldovagaz, 2 F.4th 42, 49 (2d Cir. 2021)).[7]  Respondent is correct.  In Moldovagaz, the Second Circuit explained that "foreign states [and their alter egos] do not enjoy due process protections from the exercise of the judicial power because foreign states, like U.S. states, are not 'persons' for the purposes of the Due Process Clause."  2 F.4th at 49 (citing Frontera, 582 F.3d at 399).  By contrast, however, "[a]gencies and instrumentalities of foreign sovereigns retain their status as 'separate legal person[s]'" and thus are entitled to Due Process protections even when the FSIA applies.  Id. (quoting 28 U.S.C. § 1603(b)(1)).  As the Court of Appeals for the D.C. Circuit has explained,

> [i]nstrumentalities . . . enjoy a presumption of separateness from the affiliated foreign state. Unless this presumption is rebutted by showing that either a principal-agent relationship exists between the foreign state and the instrumentality or equitable principles favor the exercise of jurisdiction, an instrumentality is protected by the Due Process Clause of the Fifth Amendment.

UAB Skyroad Leasing v. OJSC Tajik Air, No. 21-7015, 2022 WL 2189300, at *1 (D.C. Cir. June 17, 2022) (internal quotation marks and citations omitted).  Thus, to establish personal jurisdiction,

---

[7] In its opposition, petitioner utterly misapprehends this point. Petitioner construes respondent's argument as one of sovereign immunity and retorts that respondent waived any claim of sovereign immunity under the Agreement. Opp. at 19-21.  It is quite plain, however, that respondent is not challenging jurisdiction on sovereign immunity grounds.  As such, petitioner's counterarguments are meritless.

-13-

a petitioner must show that the respondent "has minimum contacts with the district court's forum or is an alter ego of the [sovereign state]." Moldovagaz, 2 F.4th at 50.

As noted above, petitioner concedes that respondent has no contacts with the United States. Further, petitioner states that respondent "is an agency or instrumentality" — not the alter ego — of the Republic of Ghana. Pet. ¶ 10. Accordingly, petitioner's alternative argument for personal jurisdiction fails, as well.

## CONCLUSION

For the foregoing reasons, the Court grants respondent's motion to dismiss the Petition for lack of personal jurisdiction. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 36 and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         August 15, 2022

_____
       NAOMI REICE BUCHWALD
       UNITED STATES DISTRICT JUDGE